## Rucker *v.* State

No. 42745 December 9, 1963 158 So. 2d 39

*Odom, Odom & Pittman,* Greenwood, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Lee, P. J.

This is an appeal by Herbert Rucker from a judgment of the Circuit Court of Carroll County, which found him guilty of assault and battery with intent to kill and murder one Fred Johnson, and sentenced him to serve a term of five years in the State Penitentiary.

The assault occurred on Saturday night, February 12, 1962, at the cafe of Salina Hudson. On the material facts, the evidence was in sharp dispute.

The defendant went to the cafe between eight and nine o'clock on the evening in question, and, being unable to get the desired meal, and at the bidding of Judge Phillips and his son and nephew, the party proceeded in the defendant's truck to Lindberg Porter's cafe, some distance away, where they stayed about thirty minutes. Salina had given her son-in-law, Judge Phillips, $6 with which to purchase some beer for her. Phillips admitted that Salina gave him the money but he testified that, after they arrived at the cafe, on the defendant's insistence, he gave this money to him.

The defendant, who lived in Greenwood but owned sixty-three acres of land in the Black Hawk Community, where this offense was committed, gave this version: After drinking a cup of coffee, Judge Phillips, whom he had known since 1952, urged the trip to Porter's; that Salina first offered him $6 to get a case of beer but he did not take her money as he refused to haul such articles in his truck; and that she then gave the money to Judge Phillips. At the cafe the defendant ordered six hamburgers, eating two, and carrying four back to Salina; that Judge Phillips bought some beer and he, his son, and a nephew, had it in their hands and were drinking; and he told them they would have to get out of his truck because he could not haul the articles.

When they got back to Salina's cafe, there was no beer and the defendant told her that Judge Phillips

had her money. Phillips, on the other hand, denied that he had the money and told her that he had given it to the defendant. An argument then ensued. It ended in a difficulty between Phillips, his son and nephew, on the one hand, and the defendant on the other, resulting in the defendant's being pushed or thrown from the porch of the building. Admittedly several persons, kinsmen of Judge Phillips, got defendant down on the ground, flat of his back, and gave him a severe beating. The final consummation was that Fred Johnson, and Judge Allen Phillips, one of Judge Phillips' sons, got shot by the defendant with a pistol which he took from under the doorsteps.

The real issue was to determine the aggressor. There is no doubt that the defendant was overpowered by Judge Phillips, or his sons and a nephew, several of whom participated in the melee, and that the defendant was severely beaten before the shooting occurred. The State offered a number of witnesses who testified that Johnson had nothing whatever to do with the beating and was an innocent bystander in the incident.

On the other hand, the evidence by the defendant himself, and Salina Hudson, the mother-in-law of Judge Phillips, was to the effect that a number of persons, including Johnson, participated in an unmerciful beating which was administered to the defendant; that he was struck on the head with a heavy bottle and was cut so badly that his face was covered with blood and he could not see; that after they quit beating him, upon his plea that they do so, finally he was able to get to the steps leading upon the porch of the building where he sat, exhausted and unaware that he was in the world; and that he saw Fred Johnson coming toward him with a big stick, and others were jeering him and continued their threats to do him serious injury. Under those circumstances, he reached behind a couple of bricks where he had a pistol hidden, pulled the weapon out and

fired at Johnson in his necessary self-defense, and that, observing John Allen Phillips approaching him in a threatening manner he also fired upon him. Defendant claimed that, under such circumstances, he acted in his necessary self-defense.

The appellant contends that the trial court committed reversible error in its refusal to allow him to introduce evidence of previous threats from, and difficulties with, Judge Phillips.

The obvious theory of the defendant was that the trouble, which culminated in the shooting of Fred Johnson, resulted from the fact that Judge Phillips, out of long-standing malice and ill will toward the defendant, induced him to drive Phillips, a son, and a nephew, to the other cafe; that Judge Phillips spent on beer and liquor for him and relatives the $6 which Salina Hudson gave him for the purchase of beer for her; that they returned, Phillips lied to Salina and told her that he had given the money to the defendant; that this controversy resulted in words of denials and threats against the defendant; that sons and nephews of Phillips, at his instance, precipitated a difficulty with defendant and pushed or knocked him from the porch; that they and others, abetted and encouraged by Phillips, beat him almost to death; that, when he finally induced them to quit beating him and let him up, he, with great difficulty, struggled to the porch of the building, with blood all over his face, and hardly knowing that he was in the land of the living; and that, while he was in that condition, he saw a man, whom he took to be Fred Johnson, approaching him with a big stick, in a menacing manner, and that he shot to protect himself, in the belief that they were about to resume their beating of him.

Evidence of previous threats and difficulties, by and with Judge Phillips, was proposed by the defendant, not only to determine the aggressor in the difficulty, but also to show how and why the defendant had the

pistol with which the assault on Johnson was actually committed.

The court permitted the defendant to cross-examine the witness Judge Phillips while he was on the stand. But the witness denied that he had ever threatened the defendant. The court permitted Salina Bishop to testify that she had seen Judge Phillips, on three or four different occasions prior to the occurrence of the charge in this case, put a pistol in the defendant's face in her cafe. But the State attempted to impeach this witness; and, if the jury believed the rebuttal witnesses in this matter, the testimony of that witness was weakened or destroyed. When the appellant took the stand, the court at first permitted the defendant to testify about several different threats which had been previously made. But then an objection was sustained. In the absence of the jury, the matters were partially gone into, and the circumstances under which the defendant obtained the pistol were set out. But finally the judge announced that he was sustaining the objection, and no evidence of prior threats or difficulties would be admitted.

Besides, the judge first held that the threats were too remote, as the threats of Judge Phillips were those of a third party, and then that, according to the State's version, Johnson was an innocent bystander. In addition, he said that, according to the State's theory, there appeared to be a possibility that Fred Johnson was shot accidentally while he was shooting at one of the Phillipsses, but that defendant's "last witness destroyed that."

Thus, the trial judge held that such alleged conduct of Judge Phillips was not admissible because it was too remote and also because the assault, for which the defendant was then being tried, was committed upon Johnson, a mere bystander. That ruling of the court completely ignored the defendant's whole theory, namely, that Judge Phillips was the one who precipitated

the trouble, incited his relatives to inflict great bodily harm upon the defendant, and aided and abetted them in their unmerciful and unlawful attack upon him. Besides, the ruling shut the defendant off from explaining that he got the pistol out of fear engendered by the threats of Phillips and had hidden it under the gallery or porch steps solely for his own self-defense in case Judge Phillips should attempt to carry out his previous threats.

In the case of Brown v. State, 88 Miss. 166, 40 So. 737, this Court, following the case of Guice v. The State, 60 Miss. 714, stated that there is a "principle of law, well settled in this state, that wherever there is doubt, confusion, dispute or conflict as to the origin of the difficulty, or as to who was the aggressor in the difficulty which resulted in the death, and when such fact is the pivotal one in the case, testimony of uncommunicated threats, and the nature and character of previous difficulties, wantonly provoked by the deceased, is always admissible, provided the testimony shows some overt act on the part of the deceased at the time of the fatal encounter." The opinion also contained an admonition on the part of trial courts not to whittle away the rights of defendants upon trial for their lives. It further pointed out that "Every ruling should resolve any doubt in favor of the accused." See also Lee v. State, 160 Miss. 618, 134 So. 185, where the above rule was adhered to, and it was held that a difficulty, which occurred in July preceding the killing in August, was not too remote.

In Clark v. State, 123 Miss. 147, 85 So. 188, the opinion said this: "The evidence as to who was the aggressor in the fatal encounter, on the solution of which the guilt or innocence of the appellant depends, being in irreconcilable conflict, the state of mind of each of the participants therein toward the other was a material

inquiry, and any evidence pertaining thereto was relevant and, unless incompetent on some other ground, should have been admitted.

"The law furnishes no test of relevancy. Unless settled by statute or controlling precedent, relevancy is to be determined by logic, being the application of the principles of reason, judgment, and systematic arrangement to the matter in hand. All facts which tend either to sustain or to impeach a logically pertinent hypothesis are admissible. But no facts are relevant which do not afford a reasonable presumption or inference as to the principal fact in issue, or which do not make more or less probable such a hypothesis." The opinion, supra, cited 1 Wharton's Criminal Evidence, § 24; 11 Ency. of Evidence, 174. See also Self v. State, 178 Miss. 560, 174 So. 44.

In Hendrix v. State, 172 Miss. 589, 161 So. 151, the state of enmity on the part of deceased toward defendant had existed for "some months." The trial court refused to admit all of the threats and previous manifestations. For that reason, this Court, citing Brown v. State, supra, reversed the judgment. See also 40 C.J.S., Homicide, § § 241-242, pp. 1176-1178.

A pivotal fact in this case was to determine the aggressor. Consequently testimony concerning the nature and previous threats by, and difficulties with, Judge Phillips, which, the defendant asserts that Phillips wantonly provoked, was material to show the state of mind of the parties. Besides, the defendant's version as to how he came to own the pistol, if believed, negatived the element of malice and would, if believed, have been of substantial value in his defense. ■■ ■ This evidence was important to the defense of this case, and, even if a rather close question, should have been admitted. Under all of the circumstances, it cannot be said that its exclusion was not harmful.

The appellant also contends that the trial judge committed error in alleged comment on certain rebuttal evidence by the State.

 The judge cannot be too particular and guarded in his words and actions in the presence of the jury. If the jury is exposed to improper influences, the law presumes that the verdict is not pure and will not hear evidence to rebut such presumption. See Green v. State, 97 Miss. 834, 53 So. 415; Collins v. State, 99 Miss. 47, 54 So. 665; and authorities there cited. However, the Court is of the opinion that it would not be warranted in holding that the judge in this instance was guilty of any indiscretion or material error.

For the reason stated, the cause will be reversed and remanded for a new trial.

Reversed and remanded.

*Kyle, Gillespie, Rodgers and Jones, JJ.,* concur.