840 So.2d 750 (2003)
John Wesley O'NEAL, a/k/a Johnny O'Neil, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01844-COA.
Court of Appeals of Mississippi.
March 18, 2003.
W.S. Stuckey, Greenwood, attorney for appellant.
*751 Office of the Attorney General, by W. Glenn Watts, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
GRIFFIS, J., for the court.
¶ 1. John Wesley O'Neal was convicted of burglary of a dwelling and sentenced to eight years in the custody of the Mississippi Department of Corrections. On appeal, O'Neal asserts that the verdict was against the overwhelming weight of the evidence. Finding to the contrary, we affirm the final judgment of the Circuit Court of Sunflower County, Mississippi.

FACTS
¶ 2. On July 8, 2000, at approximately 4:00 a.m., James McCartney was on his porch when he observed a person enter an unoccupied rental home he owned that was located about two hundred feet from his residence. He also noticed that a window air conditioning unit was missing from the rental house. Mr. McCartney went inside his home to dress and to obtain a firearm. When he came back outside, he saw a man on the porch in the alcove of the rental home standing over an air conditioning unit. Mr. McCartney approached the man, who identified himself as John O'Neal. Mr. McCartney returned to his home with O'Neal, and his wife called the police.
¶ 3. Officer Banks of the Drew Police Department responded to the call. After arriving, Officer Banks placed O'Neal in his police car. Mr. McCartney and Officer Banks then went to inspect the rental house for any damage or evidence of stolen property. They discovered that the door to the rental house had been forced open, that two air conditioning units had been taken, and that the air conditioning unit on the porch was missing a front panel.
¶ 4. While Officer Banks and Mr. McCartney were inspecting the rental house, according to Mrs. McCartney, O'Neal climbed over the seat of the police car and fled towards a nearby apartment building. Officer Banks called for assistance and Sergeant Dwight Lucas responded. They found O'Neal in his apartment and arrested him. O'Neal gave the officers permission to search his vehicle where the officers found a window air conditioning unit and the front panel of another unit in his trunk. These items were taken to the police department where the McCartneys identified the items as their missing property.
¶ 5. At trial, Mr. McCartney corroborated these events and identified O'Neal as the person on the porch of the rental home that night. Mrs. McCartney did the same. Officer Lucas also corroborated the events and identified O'Neal as the man he found hiding behind a couch in O'Neal's nearby apartment that night. The State rested and O'Neal moved for a directed verdict, which was denied by the trial court.
¶ 6. Subsequently, O'Neal testified and disputed the testimony of the State's witnesses. O'Neal contended that he was walking his dog at 4:00 a.m. when he noticed a male and a female running from the house in question and that he was soon after approached by Mr. McCartney in the middle of the street. He denied ever entering the rental home or taking anything. He testified that he was never placed in the patrol car and that he was told to go home. Further, O'Neal testified that he opened the door to his apartment and the officers rushed in and threw him behind the couch. O'Neal also stated that the stolen items were not found in his trunk and that the car had been broken down for about a week.
¶ 7. In rebuttal, the State called Marlene Hamilton, O'Neal's girlfriend and roommate. Ms. Hamilton refuted O'Neal's version *752 of the events. She testified that O'Neal's car was working that night because he picked her up from work at about 1:00 a.m. Ms. Hamilton testified that after they returned home, he left the house at about 1:30 a.m. that morning and that he never took the dog with him. She also stated that when O'Neal returned home around 5:00 a.m., the dog was already inside before she let O'Neal in the apartment. She further stated that when she let the police in, O'Neal was hiding behind the couch. More importantly, she confirmed seeing the air conditioning unit in his trunk.
¶ 8. After the defense rested and instructions were given, the jury found O'Neal guilty. O'Neal filed a motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict which was denied. O'Neal timely filed this appeal.

ANALYSIS

I. WHETHER THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 9. O'Neal contends that the evidence presented was insufficient to support his conviction. He asserts that the evidence did not establish that he was seen inside the rental house removing an air conditioning unit or at any time holding an air conditioning unit. He further denied entering the rental house or taking the property. Therefore, O'Neal asserts that the verdict of the jury was against the overwhelming weight of the evidence. The State responds by pointing out that the testimony of the McCartneys, Officer Lucas and Ms. Hamilton, taken together with all reasonable inferences, was more than sufficient evidence to support the jury's verdict.
¶ 10. This issue was recently addressed in Ford v. State, 753 So.2d 489, 490(¶ 8)(Miss.Ct.App.1999), where this Court held that:
[i]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
(citing Danner v. State, 748 So.2d 844 (Miss.Ct.App.1999)). Furthermore, the Mississippi Supreme Court has held that it:
must accept as true the evidence which supports the State's position, together with all inferences reasonably flowing therefrom in the light most favorable to the State's theory of the case. If there is sufficient evidence to support a verdict of guilty, this Court will not reverse.
Meshell v. State, 506 So.2d 989, 990 (Miss. 1987). The Court further concluded that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell, 506 So.2d at 991(citing Arteigapiloto v. State, 496 So.2d 681, 686 (Miss.1986)).
¶ 11. In addition, the Mississippi Supreme Court in Shields v. State, 702 So.2d 380, 383 (Miss.1997), held that the test to be applied in considering the sufficiency of the proof of a jury verdict based on circumstantial evidence is "whether a rational fact finder might reasonably conclude that the evidence excludes every reasonable hypothesis inconsistent with guilt of the crime charged." Shields also established a checklist of common sense circumstances to be considered:
1. The temporal proximity of the possession to the crime to be inferred;
2. The number or percentage of the fruits of the crime possessed;

*753 3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Id. (citing Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir.1982)). Using the circumstances set forth in Shields as guidance, this Court will determine whether such inferences in the present case were within the province of the jury in order to find O'Neal guilty of burglary of a dwelling.
¶ 12. Burglary of a dwelling requires two elements: (a) unlawful breaking and entering and (b) intent to commit a crime once entry has been obtained. Miss.Code Ann. § 97-17-23 (Rev.2000). The record revealed that O'Neal was not only found in close proximity to the burglarized home, but was actually found by Mr. McCartney at the home that was burglarized. In addition, O'Neal was also in close proximity to the stolen property. He was standing over one removed unit when he was approached by Mr. McCartney and the other unit and additional front panel were discovered in his car. Furthermore, the items in his car provided a reasonable inference that the items were in his possession and evidence of recent possession is legally sufficient for the jury to infer guilt of burglary. See Shields, 702 So.2d at 382.
¶ 13. Moreover, the evidence that O'Neal was hiding behind a couch when the officer found him is proof of his guilty knowledge in that, one would assume, he was attempting to hide from the police. Additionally, O'Neal offered several explanations and versions in addition to his denials of that night, such as that he was walking the dog, that his car did not work, that he saw others running from the home, and that the officers threw him behind the couch. Each of these explanations was demonstrated to be false and further indicated evidence of his attempt to conceal his guilt. Therefore, although O'Neal was never actually seen removing the air conditioners or holding them, based on Shields and the evidence presented at trial, we find that a reasonable juror could infer that O'Neal did unlawfully enter McCartney's rental home with the intent to steal the air conditioners and that he did in fact steal the air conditioner found in his trunk and the front panel of the other air conditioner.
¶ 14. As to the denials and versions presented, the jury resolved the question of conflicting testimony against O'Neal. "[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell, 506 So.2d at 991. Therefore, accepting as true all evidence favorable to the State, this Court is compelled to conclude that the evidence was of such weight and sufficiency to support the jury's findings. Thus, we affirm the judgment of the Circuit Court of Sunflower County, Mississippi.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.